735 P.2d 1059

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Barry Kent CALDWELL, Defendant-Respondent.**

**No. 16287.**

Court of Appeals of Idaho.

March 13, 1987.

Petition for Review Denied May 19, 1987.

---

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., for plaintiff-appellant.

Stanley G. Cole, Rupert, for defendant-respondent.

SWANSTROM, Judge.

A jury found Barry Caldwell guilty of grand theft. Caldwell moved for a new trial, contending that he had located a previously unavailable witness who could offer new evidence to support Caldwell's defense. The district court granted the motion. The state appeals, asserting that Caldwell's newly discovered evidence does not meet the requirements for granting a new trial. We affirm.

The record reveals the following facts. In October, 1984, Hazel Tolman moved from Idaho to Utah. Barry Caldwell helped her move some of her personal property to Utah. Tolman left other items of property with friends and placed some of her property in storage at a rented mini-storage unit. Several months later, the manager of the storage unit returned Tolman's rental check to her. He informed Tolman that her property had been removed and was no longer in storage. Tolman then discovered that Caldwell had retrieved a freezer which she had left with her friends. Caldwell sold the property he

retrieved from the storage unit and from Tolman's friends. He informed the people who were keeping Tolman's property that Tolman had told him to sell the property for her. Apparently, because Caldwell and Tolman were friends, and Caldwell had helped put Tolman's property in the storage unit, no one questioned Caldwell's representation that he had permission to sell the property for Tolman. However, Caldwell never gave the proceeds from the sales to Tolman. Caldwell later was charged with grand theft. As noted, he was found guilty by a jury.

Caldwell did not testify at trial. However, he contended that Tolman had authorized him to sell her property for her. Caldwell's former girl friend, who had traveled to Utah with Caldwell and Tolman, testified that she had heard Tolman authorize Caldwell to sell the property. Tolman denied ever giving Caldwell authority to sell any of her property. A bartender who was a friend of Tolman's—to whom Tolman had given the key to the storage area—testified that Tolman said she might have to sell the property. The bartender reported that Tolman told her to give Caldwell the key whenever he asked for it. Tolman denied this story also. Presented with this conflicting testimony, the jury found Caldwell guilty of grand theft.

After trial, Caldwell produced a new witness, Tolman's nephew, who said in an affidavit that he would corroborate Caldwell's authorization defense and would offer other testimony that Tolman tended to be forgetful when she was intoxicated. The trial judge concluded that the jury's decision had depended to a large extent on the credibility of the witnesses. The judge also determined that Caldwell had been diligent in trying to locate the nephew before the trial, but simply had been unable to do so. Based on those conclusions, the judge ordered a new trial.

A motion for a new trial is addressed to the sound discretion of the trial court. Consequently, on appeal, an order granting or denying a motion for a new trial will not

be disturbed unless the district court's discretion has been abused. *State v. Olin,* 103 Idaho 391, 648 P.2d 203 (1982).

In criminal cases, consideration by the trial court of a motion for a new trial historically has been governed by the grounds stated in I.C. § 19-2406. *State v. Palin,* 106 Idaho 70, 675 P.2d 49 (Ct.App. 1983). While the discovery of new evidence is one of the grounds for a new trial enumerated in the statute, the statutory grounds have been supplemented by Idaho Criminal Rule 34. That rule grants the trial court even broader discretion to order a new trial "if required in the interest of justice." *Id.* at 76, 675 P.2d at 55. Regardless of whether a new trial is granted under the statute or under the broader language of I.C.R. 34, the standards to be applied by a district court considering a motion based on newly discovered evidence remain the same. *Id.* These requirements, stated by the Idaho Supreme Court in *State v. Drapeau,* 97 Idaho 685, 691, 551 P.2d 972, 978 (1976), are:

(1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant.

*Quoting* 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 557, at 515 (1969).[1] Thus, if the alleged new evidence does not meet each of the requirements set forth in *Drapeau,* the district court should not grant a motion for a new trial.

The state argues first that the evidence is not "newly discovered" because of the following facts: Caldwell knew before the trial that Tolman's nephew had been present in Utah when Caldwell, Caldwell's girl friend, and Tolman arrived at the home of Tolman's sister. Caldwell knew that the nephew heard the conversation in which Tolman allegedly told Caldwell that he should sell some of her belongings for her.

---

1. This language has been retained in the 1982 edition of *Wright. See* 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 557, at 315 (1982).

Caldwell actually tried on several occasions to locate and contact the nephew in order to have him appear as a witness at trial. Notwithstanding these facts however, we have previously held in similar circumstances that the testimony of a known but unavailable witness will be considered "newly discovered evidence" where reasonably diligent efforts to produce the witness have been unavailing. *State v. Ames,* 112 Idaho 144, 730 P.2d 1064 (Ct.App.1986). As we said in *Ames,* "[a]lthough the content of an absent witness' testimony may be *predicted,* it is not 'known' until that witness is contacted." *Id.* at 147, 730 P.2d at 1067. That is borne out by the situation here. Before trial Caldwell had reason to believe that the nephew's testimony would corroborate the testimony of Caldwell's former girl friend. However, such testimony was not "known" until the nephew was contacted and his affidavit was obtained. Moreover, Caldwell did not know until contact was made that the nephew would also testify that Tolman habitually drank alcohol; that she was intoxicated when she arrived in Utah; that he had seen her on many occasions when she had been drinking; and that she frequently forgot what she had said while intoxicated. We hold that the first test under *Drapeau* has been met.

■ The evidence was also "material" and "not merely cumulative or impeaching." As the trial judge found,

[t]he matter of the prosecutrix' forgetfulness of statements made while intoxicated, was not addressed by the defendant's girlfriend, and the relationship of the prosecutrix to [the nephew] creates a good deal more importance to the substance of that testimony as it coincides with that of the defendant's girlfriend.

The judge, who saw and heard the witnesses at trial, went on to say:

In this court's opinion, the case was somewhat close and depended in a significant way on the assessment of the credibility of the prosecutrix as compared with that of the defendant's girlfriend, and a tavern keeper, another of the defendant's witnesses. There were significant areas in which the credibility of the prosecutrix appeared reasonably open to doubt, although the same could be said of the defendant's witnesses.

At oral argument before this Court it was suggested that the nephew's testimony would not be "material" because it goes only to the question of whether Caldwell had been "authorized" by Tolman to sell the property. The testimony would not refute undisputed evidence at trial showing that Caldwell never turned over any of the proceeds from the sale of Tolman's goods. The theft statutes are broad enough to make this failure criminal even though Caldwell had authority to sell the property. This view is embraced by Chief Judge Walters in his dissenting opinion.

It is true that certain provisions of the theft statute cited by the state in this case, I.C. § 18–2403(1) and (3), are broad enough to encompass two theories under which Caldwell could be found guilty of grand theft upon the evidence submitted at trial. The first theory is similar to the former crime of "larceny." Under this theory, relied on by the state in the trial below, Caldwell had no authority to take Tolman's property for any purpose. He simply stole it. The second theory would be that a theft occurred because even though Caldwell may have been authorized to sell Tolman's property, he was not authorized to retain the proceeds. This theory is predicated upon the former crime of embezzlement.[2]

However, the statute cannot be viewed in the abstract. The question is, how was the alleged crime actually charged and presented to the jury in this case? We have carefully reviewed the record including the prosecutor's information and the instructions given to the jury. It is very clear that the state did not rely on any "misap-

**2.** Former I.C. § 18–2407 covered one type of embezzlement now treated as a form of theft. The statute provided:

Every person entrusted with any property as bailee, tenant, or lodger, or with any power

of attorney for the sale or transfer thereof, who fraudulently converts the same or the proceeds thereof to his own use, or secretes it to them with a fraudulent intent to convert to his own use, is guilty of embezzlement.

propriation" or "embezzlement" theory at trial. To begin with, the information alleged the theft occurred in the following manner:

That the said defendant, Barry Caldwell, on or about the 22nd day of October, 1984, in the County of Minidoka, State of Idaho, committed the public offense of GRAND THEFT, in violation of Idaho Code Sections 18–2403(1)(3) and 18–2407, by then and there being, did then and there willfully, unlawfully, intentionally and feloniously take, steal and carry away certain personal property of another, to-wit: one (1) Sears Coldspot upright 9.0 cubic foot freezer, serial # L43622806 and model # 198725090, one (1) black and white RCA Victor console television/radio and record player, and one (1) tan Eureka vacuum cleaner, said property being then and there the property of one Hazel Beckstrom Tolman ... and of the value of over [$150]....

Except for the fact that no specific intent is alleged, this is the language that was commonly used to charge the former crime of grand larceny.

The instructions explaining the theft statute to the jury also focused solely upon the wrongful taking ("larceny") theory. For example, when the court instructed on the "material elements" of the crime of theft it listed only the elements applicable to a wrongful taking theory. Essentially, the first three of the listed elements were that the defendant "took" the property described in the information; that it belonged to Hazel Tolman; and that it was taken with the specific intent to permanently deprive her of her property. The fourth element to be proven was that the value of the property exceeded $150.

The focus on a wrongful taking form of theft is further revealed in the court's definitional instructions. The jury was given the definition of "deprive" contained in § 18–2402. In contrast the following definition from the same statute was not given:

"Appropriate." To "appropriate" property of another to oneself or a third person means:

(a) To exercise control over it, or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit; or

(b) To dispose of the property for the benefit of oneself or a third person.

Certainly this definition would have been relevant to any misappropriation form of theft.

Finally, the jury was instructed:

It is not every unlawful taking of the personal property of another, even without such other's knowledge or consent, that amounts to a theft.

A person may wrongfully take another's property through mistake or under the honest belief that he has a legal right to take possession of it, in which case the taking would not be a crime although it might render the person taking it liable to a civil action for its value or its recovery, but to make the act a crime it must have been taken with a criminal intent.

Thus, to be theft the taking must not only be unlawful but it must be done with a specific intent, that is, the taking must be done with an intent to permanently deprive the owner of the property, which intent must exist at the time of the taking.

In other words, the crime of theft consists of two elements, namely the act constituting the taking, and the intent thereby to commit a theft by permanently depriving the owner of her property. [Typographical errors corrected.]

These instructions simply were not designed to allow the jury to consider a misappropriation theory.

The state's focus at trial on the wrongful taking theory of theft, rather than on the misappropriation theory is understandable since the prosecutor was apparently relying upon Tolman's assertion that Caldwell had no authorization to sell her property. Because of the manner in which the information charged that the crime had been committed, the manner in which the state proceeded at trial and the manner in which the jury was instructed, Caldwell was not put on adequate notice that he could be

found guilty under a misappropriation theory as well as under a wrongful taking theory. Accordingly, he had no perceived need to present possible defenses to the misappropriation theory or to request additional jury instructions relating to such a theory.[3]

The case, in short, was tried on the state's wrongful taking theory. Consequently, we cannot say that the newly discovered evidence was immaterial. To the contrary, it was highly material to the case as framed by the prosecutor's information and the jury instructions.

■ The next requirement of the *Drapeau* test is that the newly discovered evidence will probably produce an acquittal. Under the theory presented by the state at trial, the state's case hinged on the jury believing Tolman's testimony that she had not authorized Caldwell to sell the property. Tolman was the sole witness to so testify. Her testimony was disputed. The district judge noted that there were "significant areas in which the credibility of the prosecutrix appeared reasonably open to doubt...." Implicitly the trial court found that the third test of *Drapeau* was met. We agree. The probability of acquittal requires only the raising of a reasonable doubt. *State v. Ames, supra.* If the state elects to retry the case on the same theory as was presented in the first trial the nephew's testimony could have a significant influence upon the outcome of the case.[4]

■ The final requirement of the *Drapeau* test is that failure to learn of the evidence was due to no lack of diligence on the part of the defendant. The state does not seriously contend there was a failure to meet this standard. Accordingly, we will not discuss in detail the circumstances

bearing on this requirement. The record shows that efforts were made by investigative officers and by Caldwell to personally contact the nephew before trial. For reasons which are not important here, the nephew chose not to respond to messages that reached him. We agree with the trial court, however, that Caldwell was reasonably diligent in trying to locate the nephew, given all the circumstances.

Accordingly, we affirm the order of the trial court granting a new trial.

BURNETT, J., concurs.

WALTERS, Chief Judge, dissenting.

I respectfully dissent. In light of the evidence and the instructions given to the jury in this case, I believe the alleged new evidence will not "probably produce an acquittal"—contrary to the verdict already found by the jury—by raising a reasonable doubt as to Caldwell's guilt. *See State v. Ames*, 112 Idaho 144, 730 P.2d 1064 (Ct. App.1986).

Caldwell was charged with grand theft under I.C. § 18–2403(1) and (3). Those sections provide:

> (1) A person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.
>
> . . . .
>
> (3) A person commits theft when he knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the intent of depriving the owner thereof.

The jury was instructed in the language of these statutes. Additionally, Instruction

---

3. For example, Idaho Code § 18–2406(3) states in part:

> (3) In any prosecution for theft committed by trespassory taking or the offense previously known as embezzlement, it is an affirmative defense that the property was appropriated openly and avowedly, and under a claim of right made in good faith....

4. We do not mean to suggest that if a retrial is conducted the state will be locked into the same narrow theory it presented in the first trial. The prosecutor can amend the information if he

acts timely so as to avoid any prejudice due to a "lack of fair notice or ... surprise." *See* I.C. §§ 19–1420 and 18–2401(2). The state will then be in a position to ask for broader instructions under the theft statutes. Caldwell will have an opportunity to request jury instructions as to possible defenses. Then, and only then, will Caldwell fairly face the possibility of a theft conviction either because he took the property without authorization or because, having such authorization, he misappropriated the property or its proceeds for his own benefit.

No. 5 explained to the jury that not every taking of property amounts to a theft. The instruction informed the jury that "[a] person may wrongfully taken [sic] another's property through mistake or under the onest [sic] belief that he has a legal right to take possession of it, in which case the taking would not be a crime...." The evidence at trial was conflicting as to whether Tolman had authorized Caldwell to sell any of her property. Accordingly, the jury could have found the existence of such authority. However, the evidence was undisputed that Caldwell was not authorized to keep the proceeds, even if he had authority to sell any of Tolman's property. Tolman testified that Caldwell never gave her the money derived from the sale of her property. Caldwell did not present any evidence to contradict that statement. In fact, testimony from Tolman's husband, called as a witness by Caldwell, corroborated Tolman's statement that she indeed had not received any money from Caldwell. Furthermore, Caldwell's girl friend and the bartender, called also as defense witnesses, both testified that Caldwell was supposed to give Tolman the money.

I disagree with my colleagues' view that the instructions limited the jury's consideration of Caldwell's guilt or innocence *solely* to a theory of larceny. Any sale by Caldwell, *without* remitting the proceeds to Tolman, would constitute an unauthorized transfer of Tolman's interest in her property. Appropriately, as instructed under I.C. § 18–2403(3) and based upon uncontradicted evidence, the jury could, and did, find Caldwell guilty of theft. Therefore, I am not persuaded that the anticipated new evidence from Tolman's nephew—to the effect that Tolman's memory may have been impaired by intoxication or that Tolman had authorized Caldwell to sell her property—would "probably produce an acquittal" on retrial. The order granting a new trial should be reversed and a judgment of conviction entered.