**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41168**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2014 Opinion No. 45** |
| Plaintiff-Appellant, | ) |
| | ) **Filed: May 23, 2014** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| DARRICK DONAHUE JOHNSON, | ) |
| | ) |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Fred M. Gibler, District Judge.

Order granting motion for judgment of acquittal, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Malcolm S. Dymkoski, Coeur d'Alene, for respondent.

---

MELANSON, Judge

The state appeals from the district court's order granting Darrick Donahue Johnson's motion for judgment of acquittal after a jury found Johnson guilty of grand theft by unauthorized control. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Johnson is the president and sole shareholder of Edge Performance, Inc., a business that sold and serviced recreational motor vehicles. In the summer of 2011, Edge became an authorized Kawasaki dealer. In October 2011, Johnson was approached by Steve Beaudry for the purpose of purchasing four Kawasaki motorcycles for use in Beaudry's business. Beaudry was the co-owner of Beaudry Motors, Inc. (BMI), which specialized in modifying a particular type of Kawasaki motorcycle for use by law enforcement organizations. The business had previously been an authorized Kawasaki dealer but lost its dealer status in August 2011. To

obtain the motorcycles needed for his business, Beaudry was required to order them through an authorized dealer, such as Edge.

The agreement between Johnson and Beaudry was not reduced to writing. Instead, the agreement, as indicated by the testimony of the parties, was as follows. Johnson was to order the motorcycles from Kawasaki and sell them to Beaudry at invoice. Johnson would then receive a five percent Kawasaki dealer "holdback" for each motorcycle, netting him a small profit.[1] Beaudry gave Johnson a check for $55,256--the invoice price of the four Kawasaki motorcycles. Johnson deposited the check into Edge's business account. The funds were commingled with Johnson's other business funds and used for other business (and possibly personal) purposes. Subsequently, the order for the four motorcycles was either never placed or never completed,[2] Kawasaki never received the money for the four motorcycles, and Beaudry never received the four motorcycles. Upon demand, Johnson refused to return the disputed funds, claiming that he had become aware that one or more third parties may be entitled to the funds.

Beaudry subsequently contacted law enforcement and reported that a theft had occurred. Johnson was charged with grand theft by unauthorized control, I.C. §§ 18-2403(3) and 18-2407(1)(b). After the state presented its case at trial, Johnson moved for judgment of acquittal, arguing that the evidence was insufficient to support a conviction for theft by unauthorized

---

[1] Johnson testified at trial that he discovered, after agreeing to place the order with Kawasaki, that he would have had to deliver the motorcycles to Beaudry's customer (an Austin, Texas, police department), thereby eliminating the small profit he originally expected. Beaudry disputed this point, stating that he included the cost of shipping to the customer in his quotes and had never previously been required to ship motorcycles through the Kawasaki dealer.

[2] The state alleged that the order was never placed, presenting Kawasaki sales records to show that Johnson never purchased the four motorcycles for Beaudry. Johnson testified that he placed the order with Kawasaki within days of receiving and depositing the check from Beaudry, but that Kawasaki refused to complete the order due to a credit hold. He testified he was informed that he could send a check to release the credit hold and order the motorcycles, but when he sent Kawasaki a check, the order still was not filled and was eventually canceled for an unknown reason. Johnson was unable to recall when he sent the check to Kawasaki or when that check was returned. He could not produce the returned check, claiming he destroyed it because it did not seem important. The jury's guilty verdict suggests that they did not find Johnson's account of the transaction credible. However, such a determination would not be necessary to the jury's verdict. The jury could have believed Johnson's account, but determined that he knowingly exercised unauthorized control by not returning the funds to Beaudry upon demand. As a result, whether the order for the four motorcycles was actually placed does not affect our decision.

2

control. The district court initially granted Johnson's motion because Johnson's initial possession and control of the check was authorized. However, the district court agreed to reconsider after the state presented further argument. The following day, the district court denied Johnson's motion for judgment of acquittal, determining that it had read the case law too broadly and concluding that, although it was "a close question," there was sufficient evidence to allow the case to proceed to the jury. Johnson made a second motion for judgment of acquittal on a different basis, which the district court also denied.

The jury found Johnson guilty of grand theft by unauthorized control. Johnson filed an I.C.R. 29(c) motion for judgment of acquittal after the verdict. The district court granted the motion, finding that the state had failed to prove that Johnson exercised unauthorized control over the property of another. The district court concluded Beaudry was not the owner of the money after he gave it to Johnson. The state appeals.

## II.

## STANDARD OF REVIEW

Idaho Criminal Rule 29 provides that when a verdict of guilty is returned, the court, on motion of the defendant, shall order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense. The test applied when reviewing the district court's ruling on a motion for judgment of acquittal is to determine whether the evidence was sufficient to sustain a conviction of the crime charged. *State v. Fields*, 127 Idaho 904, 912-13, 908 P.2d 1211, 1219-20 (1995). When reviewing the sufficiency of the evidence where a judgment of conviction has been entered upon a jury verdict, the evidence is sufficient to support the jury's guilty verdict if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

3

### III.

### ANALYSIS

The state alleges that the district court erred by granting Johnson's post-verdict motion for judgment of acquittal. Specifically, the state argues that the district court's determination that Beaudry was no longer the owner of the $55,256 when he gave it to Johnson was incorrect. The state contends Beaudry intended for Kawasaki--not Johnson--to be the ultimate recipient of the money and therefore a bailment was created. Thus, Beaudry retained ownership of the funds and there was substantial evidence to support the jury's verdict. Johnson responds that the check from BMI to Edge was an unconditional promise to pay those funds, giving Johnson unconditional possession--and therefore ownership--of the funds. Thus, Johnson argues, he could not be guilty of exercising unauthorized control over funds that Edge owned. The ultimate issue in this case is whether Beaudry parted with his ownership interest in the $55,256 when he wrote the check to Edge and gave Johnson authority to deposit the funds.

The crime of theft by unauthorized control was created following consolidation of the various theft statutes in 1981. *See* I.C. § 18-2401 (consolidating prior theft-type offenses, including embezzlement and larceny, into a single offense of theft); 1981 Idaho Sess. Laws ch. 183, § 2 (repealing former Chapter 24, Title 18 and enacting the current Chapter 24, Title 18). Under the statute, a person "commits theft when he [or she] knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the intent of depriving the owner thereof." I.C. § 18-2403(3). At issue in this case is the definition of "owner." Idaho Code Section 18-2402(6) defines "owner" for purposes of the theft statute as "any person who has a right to possession [of property] superior to that of the taker, obtainer, or withholder." Thus, the state had the burden of proving that Beaudry had possessory rights to the funds superior to any possessory rights that Johnson had when he exercised the alleged unauthorized control.

To prove this, the state argues that the evidence in this case indicated that the agreement between Johnson and Beaudry was in the form of a bailment.[3] The Idaho Supreme Court has noted that a bailment is defined as follows:

---

[3]     The state did not present this theory at trial and the jury was not instructed on the law concerning bailment. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). However, the state

4

"A delivery of goods or personal property, by one person to another, in trust for the execution of a special object upon or in relation to such property, beneficial either to the bailor or bailee or both, and upon a contract, express or implied, to perform the trust and carry out such object, and thereupon either to redeliver the goods or personal property to the bailor or otherwise dispose of the same in conformity with the purpose of the trust."

*Loomis v. Imperial Motors, Inc.*, 88 Idaho 74, 78, 396 P.2d 467, 469 (1964) (quoting BLACK'S LAW DICTIONARY (4th ed. 1951)). Thus, the basic elements of a bailment are (1) the delivery of personal property from one person to another for a specific purpose, (2) the acceptance by the transferee of such delivery, (3) an express or implied agreement that the purpose will be fulfilled, and (4) an understanding that the property will be returned to the transferor or dealt with as the transferor directs. *Loomis*, 88 Idaho at 78, 396 P.2d at 469. Additionally, except for in quasi or constructive bailments, creation of a bailment requires an intent to create a bailment and the assent of the parties to the bailment contract. *Id.*; 8 C.J.S. *Bailments* § 18 (2005). A transfer of property under a contract of bailment involves the transfer of only a possessory interest to the bailee; title to the property remains in the bailor. 8A AM. JUR. 2D *Bailments* § 51 (2009); 8 C.J.S. *Bailments* § 32 (2005). Indeed, there can be no transfer of ownership in a contract of bailment because, if there is a transfer of ownership, it becomes a sale. 8 C.J.S. *Bailments* § 32.

We have previously acknowledged that I.C. § 18-2403(3) is broad enough to encompass a theory of theft predicated upon a former type of embezzlement that covered bailments. *State v. Caldwell*, 112 Idaho 748, 751, 735 P.2d 1059, 1062 (Ct. App. 1987).[4] Thus, because a bailee is not the owner of bailed property, presentation of evidence showing the creation of a bailment

did present the same type of argument below that it now frames as supporting creation of a bailment, and Johnson did acknowledge that the state's argument in opposition to the post-verdict motion to acquit was essentially that a bailment existed. As a result, we will consider the state's bailment argument on its merits.

[4]    We noted in *Caldwell*, in reference to I.C. § 18-2403(3), that former I.C. § 18-2407 covered one type of embezzlement now treated as a form of theft. *Caldwell*, 112 Idaho at 751 n.2, 735 P.2d at 1062 n.2. Former I.C. § 18-2407 provided:

> Every person entrusted with any property as bailee, tenant, or lodger, or with any power of attorney for the sale or transfer thereof, who fraudulently converts the same or the proceeds thereof to his own use, or secretes it to them with a fraudulent intent to convert to his own use, is guilty of embezzlement.

may prove that an individual retained ownership of personal property for purposes of theft by unauthorized control.

The state contends that the transaction between Johnson and Beaudry constituted a bailment because Beaudry gave Johnson the funds for the specific purpose of purchasing four motorcycles from Kawasaki. The state concedes that Beaudry voluntarily gave Johnson the check and that Edge was authorized to negotiate the check through deposit into its business account. However, the state argues that the parties did not intend for Johnson or Edge to be the ultimate recipient of the money; instead, Johnson was only authorized to use and possess the money for the specific purpose of transferring it to Kawasaki. Johnson responds, in essence, that the transaction was a sale from Edge to BMI involving the order and delivery of the motorcycles.

In determining the character of a particular transaction or agreement that has elements characteristic of both a bailment and a sale, the cardinal principle governing the construction of all contracts prevails. 8A AM. JUR. 2D *Bailments* § 21 (2009). That is, the intention of the parties controls and this intention must be determined from the agreement as a whole. *Id.* Because this was an oral agreement between Johnson and Beaudry, the only evidence presented regarding the terms of the agreement was through the testimony of the parties involved. This testimony failed to provide any evidence supporting the creation of a bailment and specifically failed to show that the parties' intent was to create a bailment. Indeed, the evidence presented at trial contradicted this assertion.

On direct examination, Beaudry was asked to describe the agreement that he and Johnson had entered into, to which he responded that the "deal was that [Johnson] *would sell me the motorcycles at Kawasaki's invoice*." (Emphasis added.) This statement shows that Beaudry intended to buy the four motorcycles from Edge, not from Kawasaki. Moreover, Johnson testified on both direct and cross-examination that Beaudry's offer was "not attractive" because the motorcycles were going to be sold to Beaudry at invoice instead of retail, further indicating that the intent of the parties was for Beaudry to purchase the four motorcycles from Edge, not Kawasaki. Beaudry gave Johnson the check for $55,256 made out to Edge essentially in exchange for Johnson's promise to order and deliver four Kawasaki motorcycles. Thus, even when considered in the light most favorable to the state, the evidence adduced at trial shows that the agreement was in the form of a sale, not a bailment.

6

Accordingly, and as determined by the district court, this case is controlled by *State v. Henninger*, 130 Idaho 638, 945 P.2d 864 (Ct. App. 1997). In *Henninger*, a defendant was charged with theft by unauthorized control. The defendant had entered into an installment sales contract with a car dealership to purchase a vehicle and gave a promissory note, which was due the next day, for the down payment. However, the defendant failed to pay the promissory note, make a payment on the installment contract, or return the vehicle to the dealership. On appeal, this Court concluded there was insufficient evidence to establish that Henninger's possession of the vehicle constituted unauthorized control under the statute. *Id.* at 643, 945 P.2d at 869. The dealership had not only given Henninger full possession; it had transferred title to him by delivering all necessary title documents, thereby relinquishing "all the badges of ownership." *Id.* at 641, 945 P.2d at 867. Indeed, the vehicle was no longer owned by the dealership but was, instead, the collateral for the secured transaction. *Id.* Although the defendant made several misrepresentations in the secured installment contract, he was the owner of the vehicle and could not exercise criminal unauthorized control over it thereafter. We rejected the state's argument that the defendant's lawful possession of the vehicle converted to unauthorized control upon his failure to pay the promissory note or return the vehicle. *Id.* The dealership's remedy was to exercise its right to repossess the vehicle pursuant to the terms of the security agreement, not pursue a criminal action against the defendant for unauthorized control. *Id.* We also noted that the legislature did not intend the retention of collateral after default on a secured obligation to constitute theft by unauthorized control. *Id.* at 642, 945 P.2d at 868.

Here, Johnson (through Edge) was given all the badges of ownership of the funds represented by the check written out to Edge. The state presented no evidence indicating that Beaudry (through BMI) retained any possessory interest superior to Johnson's admitted right to possess and control the funds under the oral agreement. Upon issuance of the check, BMI relinquished its ownership interest in those funds, retaining only an unsecured contractual right to return of the funds or delivery of the motorcycles. As noted by the district court, this right was enforceable through an action for specific performance or damages. Although the state argues that a bailment was created because the funds were given for the specific purpose of purchasing the four motorcycles, the same could be said of all commercial transactions involving prepayment for goods to be ordered and delivered. Consistent with our determination in *Henninger* of the legislative intent behind I.C. § 18-2403(3), it is unlikely that the legislature

7

intended for a seller's failure to deliver goods or return funds in a commercial sale circumstance to constitute theft by unauthorized control. Although we acknowledge that a seller does not gain ownership of funds upon receipt in every circumstance, the state has failed to present substantial evidence to show otherwise here. Absent evidence indicating retention of ownership rights, such as through evidence of the parties' mutual intent, the criminal law is not the appropriate means of resolving disputes of a contractual nature. *See State v. Owen*, 129 Idaho 920, 928, 935 P.2d 183, 191 (Ct. App. 1997) (noting that Article I, Section 15 of the Idaho Constitution is intended to prohibit imprisonment over disputes which are contractual in nature). As a result, there was not substantial evidence upon which a reasonable trier of fact could have found beyond a reasonable doubt that the funds over which Johnson exercised control were the property of another. The district court did not err in granting Johnson's motion for judgment of acquittal.

## IV.

## CONCLUSION

The state failed to present substantial evidence upon which a reasonable trier of fact could have found beyond a reasonable doubt that Johnson was not the owner of the funds at issue--an essential element of the crime of theft by unauthorized control. Accordingly, we affirm the district court's order granting Johnson's post-verdict motion for judgment of acquittal.

Judge LANSING and Judge GRATTON, **CONCUR.**